UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>　　　　　　Plaintiff,<br>　v.<br>STEVE M. BAJIC,<br>RAJESH TANEJA,<br>NORFOLK HEIGHTS LTD.,<br>FOUNTAIN DRIVE LTD.,<br>ISLAND FORTUNE GLOBAL LTD.,<br>CRYSTALMOUNT LTD.,<br>WISDOM CHAIN LTD.,<br>SSID LTD.,<br>SURE MIGHTY LTD.,<br>TAMARIND INVESTMENTS INC.,<br>KENNETH CIAPALA,<br>ANTHONY KILLARNEY,<br>BLACKLIGHT SA,<br>CHRISTOPHER LEE MCKNIGHT, and<br>AARON DALE WISE,<br>　　　　　　Defendants. | Civil Action No. 20-cv-00007-LGS |

**DECLARATION OF TREVOR T. DONELAN**

I, Trevor T. Donelan, pursuant to 28 U.S.C. §1746, hereby declare as follows:

1. Since September 2014, I have been employed as an Enforcement Accountant with the Securities and Exchange Commission ("the Commission"). My duties include conducting investigations relating to potential violations of the federal securities laws.

2. I received a Bachelor of Science degree in business administration, with a concentration in accounting, from the University of Richmond in Virginia in 2000. Before joining the Commission, I was a managing director in the forensic accounting and complex business litigation unit at StoneTurn Group, LLP for over seven years. Before that, I held forensic accounting and auditor positions for about seven years with other firms.

3. I am a Certified Public Accountant in the Commonwealth of Massachusetts, and a Certified Fraud Examiner by the Association of Certified Fraud Examiners. I am also certified in Financial Forensics by the American Institute of Certified Public Accountants.

4. I make this declaration based upon my personal knowledge and upon information and belief as set forth below, and in support of the Commission's Motion for an Order Freezing and Repatriating Assets.

5. On or about February 9, 2017, I became actively involved in the Commission's investigation into possible violations of the federal securities laws by Steve Bajic, Rajesh Taneja, Kenneth Ciapala, Anthony Killarney, and the companies they control (collectively, the "Platform Defendants").

6. During that investigation, I reviewed documents and data produced to the Commission and attended witness interviews and testimony. This declaration relays information gathered through those witnesses and documents.

7. The principal sources of documentation produced to the Commission that I

have relied upon for this declaration include, but are not limited to:

    a.    Transfer agent records for certain public company issuers held by and/or traded by the Platform Defendants.

    b.    Trading data collected by the Commission for certain public company issuers held by and/or traded by the Platform Defendants ("Blue Sheet Data").

    c.    Brokerage records for the Platform Defendants' accounts held at foreign broker-dealers including the following (collectively, the "Platform Defendants' Accounts"): RHB Securities Hong Kong Limited (Hong Kong), Yuanta Securities (HK) Company Limited (Hong Kong), Bank of Singapore (Singapore), Haywood Securities, Inc. (Canada), Tendall Capital Markets, Ltd. (Malta), Beaufort Securities Limited (United Kingdom), and Peter Pesic & Co. Securities, Inc. (Mauritius).

    d.    Banking records for the Platform Defendants' accounts held at foreign banks (collectively, the "the Platform Defendants' Foreign Bank Accounts"): Bank of Montreal (Canada), The Hong Kong and Shanghai Banking Corporation (Hong Kong), Hang Seng Bank Limited (Hong Kong), Overseas Chinese Banking Corp (Singapore), DBS Bank Limited (Singapore), Bank of Cyprus Public Company, Ltd. (Cyprus), and Breder Suasso Limited (New Zealand).  The latest of these account statements I reviewed showed a combined balance in these accounts of less than $42 million.

    e.    Documents produced by the Royal Canadian Mounted Police ("RCMP").

    8.    Counsel for the Commission has asked me to summarize some of the Platform Defendants' transactions, including: (a) their receipt, deposits and sale of certain public companies' stock, including Blake Insomnia Therapeutics, Inc. ("Blake"); and (b) their movement of cash among the Platform Defendants' Accounts, the Platform

Defendants' Foreign Bank Accounts and other accounts.

9. To date, as a result of the trading described in the Complaint, I have been able to identify about $35 million in trading proceeds received jointly by the Bajic-Taneja Defendants and their co-defendants involving issuers where both platforms coordinated trading--as evidenced by commission sharing; I have also identified another approximately $7 million in trading proceeds received by the Bajic-Taneja Defendants without known coordination with their co-defendants, for a total of about $42 million in trading proceeds.

**Bajic-Taneja and Blacklight Ownership Concentration**

10. I reviewed records obtained from transfer agents for several public company issuers whose stock was held by and/or traded by the Platform Defendants.

11. For the issuers listed in the table in paragraph 13 below, using the transfer agent records, I was able to trace the transfer of shares into the Platform Defendants' control. The table shows the date that shares were first transferred to the Platform Defendants, and the total number of shares transferred to them, which were converted into electronic format by depositing the certificates with the Depository Trust & Clearing Corporation ("DTCC"). Once the Platform Defendants' shares were deposited with DTCC, they were available to be traded electronically ("Shares Available for Trading").

12. I also used the records obtained from the transfer agents to determine the balance of Shares Available for Trading as of the Platform Defendants' latest deposit to DTCC, and I calculated the percentage of Shares Available for Trading transferred to and deposited by the Platform Defendants.

13. Finally, using records obtained from the Platform Defendants' Accounts, I calculated the trading proceeds generated by the Platform Defendants from selling stock in

these seven example issuers based on available brokerage records, which approximated $22.8 million in the aggregate. This estimate represents the minimum amount of proceeds for these seven issuers because there may be Platform Defendant brokerage accounts for which the Commission has not yet received complete trading records.

| Issuer | Location | Date of First Transfer | Nominees Used to Aggregate Shares | Cumulative Shares Controlled by Bajic-Taneja Platform and Blacklight SA Deposited with Brokers | Total Shares Available for Trading As of Last Deposit | Bajic-Taneja Platform's and Blacklight SA's Percentage of Shares Available for Trading | Minimum Gross Proceeds to Bajic-Taneja Platform and Blacklight SA |
|---|---|---|---|---|---|---|---|
| BKIT | New York, NY | 7/9/2015 | 7 | 9,207,572 | 9,208,572 | 99.99% | $ 7,270,347 |
| PCFP | Seattle, WA | 4/26/2017 | 4 | 9,420,000 | 9,480,000 | 99.37% | $ 4,362,535 |
| DRNG | London, UK | 7/6/2015 | 4 | 24,765,000 | 34,855,480 | 71.05% | $ 4,248,170 |
| VIBI | New York, NY | 9/6/2016 | 5 | 12,300,000 | 15,000,000 | 82.00% | $ 3,055,573 |
| BLTO | Las Vegas, NV | 2/24/2017 | 6 | 10,133,519 | 10,581,429 | 95.77% | $ 2,378,360 |
| GLBB | Centennial, CO | 4/5/2017 | 2 | 900,000 | 1,815,000 | 49.59% | $ 846,202 |
| SPRN | Rockville Centre, NY | 2/19/2016 | 3 | 8,692,800 | 20,241,615 | 42.95% | $ 685,502 |
| TOTAL | | | | | | | $ 22,846,690 |

14. For each of the issuers listed in the table above, I searched filings made with the Commission and found that no person or entity associated with the issuers filed any Forms 144. For these 7 issuers, I also searched the public filings, including registration statements, for the names of the Bajic-Taneja entities that sold stock of the above issuers as well as their co-defendants' entities that sold the stock of the above issuers. The purpose of my search was to assess whether any public registration statements disclosed the names of those entities as selling shareholders. I did not observe any of the entities subject to my search in the filings of the companies identified in the table above.

15. Attached as Exhibits 1-6 are excerpts of documents obtained by the Commission concerning the Bajic-Taneja Entities, which have been redacted to remove full account numbers and other personal identifying information: Island Fortune Global Ltd. (Exhibit 1), Crystalmount Ltd. (Exhibit 2), Wisdom Chain Ltd. (Exhibit 3), Fountain Drive Ltd. (Exhibit 4), Tamarind Investments Inc. (Exhibit 5), and SSID Ltd. (Exhibit 6).

16. I have reviewed corporate documents relating to Norfolk Heights Ltd, which

identify Person A as its principal. I have reviewed the transcript of a voluntary statement made by Person A to the RCMP, which reflects that Person A told the RCMP that he took direction from Bajic with respect to Norfolk Heights.

17. I have reviewed corporate documents relating to Sure Mighty Ltd., which identify Person B as its principal. I am aware that the RCMP interviewed Person B and that Person B told the RCMP that he took direction from Taneja and/or Bajic with respect to affairs related to Sure Mighty Ltd.

18. I have reviewed documents relating to various offshore entities associated with Blacklight SA, including Offshore Nominees A, B, and C, which show that Blacklight SA opened brokerage accounts on behalf of each of these entities and that Ciapala and Killarney, on behalf of Blacklight SA, had authority over the brokerage accounts held in the names of Offshore Nominees A, B, and C.

19. I have reviewed electronic spreadsheets found by the RCMP during a search of Bajic's residence. Some of the spreadsheets are electronic ledgers where Bajic tracked the activities of each Bajic-Taneja nominee for each issuer, including deposits, withdrawals, sale proceeds, and the calculation of commissions earned on those sales (which were usually about 4-10% of the value of the stock sold). Bajic tracked his and Taneja's sales of Blake stock on these ledgers regardless of whether the nominal owner of the selling nominee account was Bajic, Taneja, Person A, or Person B.

20. Based on my review of these ledgers, I found that Bajic treated the nominee entities as fungible – transferring balances between ledgers with no discernable justification. For example, when a wire payment for a stock promotion charged to Norfolk Heights' ledger for Blake caused Norfolk Heights' balance to fall below zero, Bajic transferred

$112,000 of value from Fountain Drive's ledger for Blake to Norfolk Heights to cover the shortfall. I have not seen any records reflecting the substance of this transaction between Fountain Drive (nominally owned by Taneja) and Norfolk Heights (nominally owned by Person A), nor have I seen any other justification for this transfer.

21. Other spreadsheets obtained from Bajic's residence showed how Bajic tracked commissions attributable to the sales of stock by all of the nominees that he and Taneja controlled, and reflected that half of the commissions from these sales were shared with Ciapala and Killarney.

**Other Documents**

22. Attached as Exhibit 7 are examples of electronic versions of invoices recovered from Bajic's residence. The metadata from several of these electronic documents reveal that they were prepared and/or modified by Bajic.

23. Attached as Exhibit 8 is an email sent from Bajic to an employee at Asia Business Services, which was produced to the Commission by the RCMP.

24. Attached as Exhibit 11 are four excerpts taken from a WhatsApp chat transcript reflecting conversations between Bajic and Taneja that were recovered from a phone located at Bajic's residence and were produced to the Commission by the RCMP. Based on the circumstances of the recovery of the transcripts as well as a review of the transcripts themselves, I have determined that the WhatsApp user identified as "Raj" is Rajesh Taneja and the WhatsApp user identified as "Jason" is Steve Bajic.

25. I have reviewed banking records and communications from the time period of the Excerpt #2 WhatsApp chat, which revealed that, in July 2018, representatives from Overseas Chinese Banking Corp ("OCBC") requested support for a wire payment sent in

February 2018 from Fountain Drive Ltd. to the "Stem Cell Institute" in the amount of $78,499.  Attached as Exhibit 9 is an email exchange between Taneja and representatives of OCBC bank that contain OCBC's inquiries about the wire and Taneja's responses.

26.  Attached as Exhibit 12 are three excerpts taken from Threema chat transcripts reflecting conversations between Bajic and Ciapala and between Bajic and Killarney that were recovered from a phone located at Bajic's residence and were produced to the Commission by the RCMP.  Based on the circumstances of the recovery of the transcripts as well as a review of the transcripts themselves, I have determined that the user identified as "Conceptman" is Kenneth Ciapala, the user identified as "PTM32X6K" is Anthony Killarney, and the user identified as "Jason S" is Steve Bajic.

**Blake Insomnia Therapeutics, Inc.**

27.  I have reviewed Commission filings, transfer agent records, brokerage records, bank records, and other records produced to the Commission concerning Blake.

28.  Blake is a publicly traded company that was incorporated in Nevada in 2012.  In January of 2019, Blake changed its name to BioHemp International Inc.

29.  In or about August 2012, Blake issued approximately 10.6 million shares. In a private offering, Blake sold approximately 1 million shares (in total) to 35 purportedly unaffiliated investors.  In September 2012, Blake registered these 35 shareholders' shares for sale in a Commission filing.  At or about that time, Blake also issued approximately 9.6 million shares (in total) to four other shareholders for services purportedly rendered to the company.  These shares were also registered for resale, but were issued as restricted shares.  Blake registered its stock pursuant to Exchange Act Section 12(g) in 2013.

30.  On or about December 16, 2013, an entity controlled by Blacklight SA paid

approximately $275,080 to Blake for purposes of acquiring almost all of the 10.6 million outstanding shares of the company's stock.

31. Shortly thereafter, the following transfers of Blake stock occurred: (i) all 35 purportedly unaffiliated shareholders who had purchased Blake shares in 2012 transferred their stock (totaling about 1 million shares) to a single offshore nominee entity controlled, directly or indirectly, by Blacklight SA. These shares did not have a restrictive legend on them (*i.e.*, these shares were not identified as restricted from resale); and (ii) one or more persons caused all of the remaining shares (approximately 9.6 million) to be transferred to seven offshore nominee companies—all in roughly equal blocks of shares. These 9.6 million shares had restrictive legends on them.

32. In January 2014, Blake issued 21 million new shares of restricted stock to Blake's new Chief Executive Officer and a Blake consultant, increasing the total shares outstanding to about 31.6 million shares. After Blake issued these 21 million shares, the seven offshore nominee entities each held between 4.3% and 4.4% of Blake stock. The eighth nominee entity (the Blacklight SA entity to which the 35 purportedly unaffiliated Blake investors had transferred their shares) then held about 3.2% of Blake stock.

33. Attached as Exhibit 10 is a letter dated December 5, 2014, from an attorney to Blake's transfer agent. After receiving this letter, Blake's transfer agent removed the restrictive legends from the stock held by the seven offshore nominee entities.

34. Subsequently, all of the eight offshore nominee entities that held Blake stock transferred all of their Blake stock to entities controlled by the Platform Defendants. For example, on or about July 9, 2015, one of the nominee companies transferred 1,390,000 shares of Blake to defendant Fountain Drive Ltd. This transfer comprised approximately

4.4% of Blake's then-issued and outstanding stock. The next day, a second nominee company transferred 1,370,000 shares of Blake to defendant Island Fortune Global Ltd. This transfer comprised approximately 4.4% of Blake's then-issued and outstanding stock.

35. I have reviewed Commission filings which show that none of the Platform Defendants disclosed collective beneficial ownership of more than 5% of Blake stock.

36. Bank records reflect that from December 2016 through June 2017, several Bajic-Taneja nominees collectively transferred about $4.0 million to a Singapore entity, which in turn transferred approximately $3.7 million to a Nevada corporation, which in turn transferred approximately $3.4 million to a stock promotion company. The stock promotion company records reflect that the approximately $3.4 million received from the Nevada corporation were payments for promoting Blake and other stocks sold on the Platforms.

37. The following table is a summary of transfer agent records reflecting the ownership of roughly 10.6 million shares of Blake stock by eight nominees controlled by the Platform Defendants. At the time these nominees acquired their shares, each of them owned less than 5% of Blake's total outstanding stock.

| Shareholder | Date Acquired | Platform | Shares Owned | % of Purported Unrestricted Shares |
|---|---|---|---|---|
| Fountain Drive Ltd. | 7/9/2015 | Bajic-Taneja Platform | 1,390,000 | 13.12% |
| Island Fortune Global Ltd. | 7/10/2015 | Bajic-Taneja Platform | 1,370,000 | 12.93% |
| Norfolk Heights Ltd. | 7/21/2016 | Bajic-Taneja Platform | 997,500 | 9.41% |
| Offshore Nominee A | 12/13/2016 | Blacklight SA | 1,380,000 | 13.02% |
| Offshore Nominee B | 12/13/2016 | Blacklight SA | 1,390,072 | 13.12% |
| Crystalmount Ltd. | 12/21/2016 | Bajic-Taneja Platform | 1,380,000 | 13.02% |
| Offshore Nominee C | 2/6/2017 | Blacklight SA | 1,300,000 | 12.27% |
| Tamarind Investments, Inc. | 7/3/2017 | Bajic-Taneja Platform | 1,389,000 | 13.11% |
| **TOTAL** | | | **10,596,572** | **99.99%** |

38. The following table is a summary of brokerage records reflecting sales of Blake stock by the Platform Defendants during the Blake stock promotion campaign which

9

ran from January 9, 2017 through March 3, 2017.

| Nominee | Platform | Shares Sold | Proceeds Generated |
|---|---|---|---|
| Crystalmount Ltd. | Bajic-Taneja Platform | 1,380,000 | $ 1,254,960 |
| Fountain Drive Ltd. | Bajic-Taneja Platform | 808,100 | $ 709,763 |
| Island Fortune Global Ltd. | Bajic-Taneja Platform | 22,193 | $ 19,339 |
| Norfolk Heights Ltd. | Bajic-Taneja Platform | 540,500 | $ 468,817 |
| Offshore Nominee A | Blacklight SA | 1,380,000 | $ 1,782,824 |
| Offshore Nominee B | Blacklight SA | 1,150,751 | $ 1,058,877 |
| **TOTAL** | | **5,281,544** | **$ 5,294,581** |

39. In April 2017, after the promotional campaign ended, the stock price and trading volume of Blake declined.

40. The following table is a summary of brokerage records and shows, on certain dates as indicated, the sales of Blake stock by the Bajic-Taneja Platform, and the purchases of Blake stock by the Blacklight Platform:

| Date | Sales by Bajic-Taneja Platform | Purchases by Blacklight SA | Coordinated Trades | Total Market Volume | Coordinated Trades as % of Market Volume |
|---|---|---|---|---|---|
| 4/26/2017 | 256,108 | 232,500 | 232,500 | 506,602 | 46% |
| 4/27/2017 | 482,900 | 500,000 | 482,900 | 647,083 | 75% |
| 4/28/2017 | 474,600 | 240,000 | 240,000 | 1,043,100 | 23% |
| 5/1/2017 | 23,000 | 35,500 | 23,000 | 86,813 | 26% |
| 5/22/2017 | 101,000 | 165,000 | 101,000 | 470,223 | 21% |
| 5/23/2017 | 45,300 | 91,000 | 45,300 | 388,046 | 12% |

41. In total, the Platform Defendants sold at least 7.2 million shares of Blake stock and generated gross proceeds of at least $7.2 million.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on January 6, 2020, in Boston, Massachusetts.

*[signature]*
Trevor T. Donelan