# MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
JODI MISHER PEIKIN
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

ranello@maglaw.com
212-880-9520

SENIOR COUNSEL
PAUL R. GRAND

COUNSEL
DEVIN M. CAIN
JASMINE JUTEAU
CURTIS B. LEITNER
JACOB W. MERMELSTEIN
DANIEL F. WACHTELL

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT

January 15, 2020

**BY ECF**

Hon. Lorna G. Schofield
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 1106
New York, NY 10007

      Re: <u>*SEC v. Bajic, et al.*, Civil Action No. 20-cv-00007-LGS</u>

Dear Judge Schofield,

      I am writing on behalf of Steve Bajic to ask the Court to vacate or modify the Order entered January 9, 2020 freezing Mr. Bajic's assets (the "Order"). (Dkt. 37). The Securities and Exchange Commission ("Commission") has not demonstrated any reasonable basis for this Order. It has provided no evidence that Mr. Bajic has taken any steps to hide his assets. The Commission has also provided no factual support for its claims that Mr. Bajic has engaged in securities fraud. Despite the absence of any reasonable basis for the Order, it is having devastating consequences for Mr. Bajic.

      Mr. Bajic is a citizen of Canada and Croatia and a resident of Canada. Most importantly, he has not been served with the Commission's complaint. For that reason, we have not been required to enter a formal appearance in this case.[1] We preserve all our objections to service, to personal jurisdiction of this Court over Mr. Bajic, and to venue in this Court.

---

[1] By letter dated January 14, 2020, Ms. Shields does not dispute that she informed us that the Commission's motion was an on notice motion. Ms. Shields did not say she "thought" the Court would give us time to respond. She said that we had the "normal notice time" to respond. Unfortunately, again, the Commission has failed to give the full story to the Court. What Ms. Shields neglected to mention was that in our call, we informed her that we needed to understand whether she would take the position that the Commission's proposed freeze would cover our legal fees. If so, it would be illegal and improper for us to receive money to represent Mr. Bajic. If Mr. Bajic cannot use his funds to hire a lawyer, he cannot have representation in a civil case in the United States. Ms. Shields is also aware that, based on our discussions, we were considering whether we would enter a formal appearance or not. Indeed, such an appearance would not be required until Mr. Bajic's responsive pleading was due. In this case, according to Ms. Shields' representation, that would have been 14 days from the filing of her motion.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Lorna G. Schofield
January 15, 2020
Page 2

## I.     Procedural Background

On January 2, 2020, the Commission filed a complaint against 15 defendants, including Steve M. Bajic. (Dkt. 1). The complaint alleges that unnamed control persons, an asset management company, and others (including Mr. Bajic) violated the securities laws.

Simultaneously with the filing of the complaint, lawyers for the Commission called to inform us that it would also be filing a motion to freeze Mr. Bajic's assets. During that conversation, the Commission's lawyers explicitly told us that they would file the motion on notice and would not seek a temporary restraining order on an *ex parte* basis.

On January 6, 2020, the Commission filed a motion for an order freezing and repatriating assets against certain defendants, including Mr. Bajic. (Dkt. 5). The motion asserts that Mr. Bajic and certain other defendants violated the securities laws and that the Court should freeze all of Mr. Bajic's assets and repatriate them to the United States in order to ensure that he has sufficient assets to cover disgorgement, interest, and penalties that the Court may order.

Shortly before filing the motion, the Commission's lawyers sent us a copy. In a subsequent conversation, we asked the Commission's lawyers to confirm that the motion was filed on notice and we asked how long we would have to respond. The Commission's lawyers stated that we would have the time provided by the Federal Rules of Civil Procedure (*i.e.* 14 days) to respond.

On January 9, 2020, the Court, apparently unaware of the above discussions, entered the Order freezing Mr. Bajic's assets. Mr. Bajic has not had an opportunity to oppose the motion.

Because of the Commission's motion to freeze Mr. Bajic's assets and the Order, counsel is unable to enter a formal appearance in this matter.

## II.    The Commission Has Not Alleged That Bajic Has Hidden Assets

A court considering whether to issue an asset freeze must weigh "the disadvantages and possible deleterious effect of a freeze . . . against the considerations indicating the need for such relief." *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1106 (2d Cir. 1972). Moreover, it must consider whether there is (1) a concern that the defendant will dissipate the assets within the defendant's control or will transfer the assets beyond the jurisdiction of the United States, and (2) a basis to infer that the defendant violated the securities laws. *SEC v. Santillo*, 2018 WL 3392881, *2 (S.D.N.Y. July 11, 2018).

No basis exists for concluding that Mr. Bajic might hide his assets. Mr. Bajic first learned that he was under investigation in July 2018. During the ensuing seventeen months he has not taken any steps to conceal his assets. In view of the undisputed fact that Mr. Bajic has not sought to conceal his assets, no reasonable basis exists for freezing his assets. *See SEC v. Morgan*, 2019 WL 2385395, at *11 (W.D.N.Y. June 5, 2019) (declining to issue an asset freeze where the Commission provided "no evidence of any attempts by [defendant] to transfer or dissipate assets");

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Lorna G. Schofield
January 15, 2020
Page 3

*see also SEC v. Int'l Loan Network, Inc.*, 770 F. Supp. 678, 697 (D.D.C. 1991), *aff'd*, 968 F.2d 1304 (D.C. Cir. 1992) (lifting freeze on assets of the individual defendants absent a showing that they had improperly diverted or secreted assets).

### III.     An Asset Freeze Prevents Mr. Bajic from Being Represented by Counsel

The asset freeze makes it impossible for Mr. Bajic to be represented by an attorney. As the Commission is aware, Mr. Bajic is involved in a number of legal issues requiring his representation.

### IV.     Mr. Bajic Has Not Engaged In Any Fraudulent Conduct

The Commission's complaint does not allege any facts that would support its claim that Mr. Bajic engaged in securities fraud. The complaint does not allege that Mr. Bajic made false or misleading statements, caused others to make them, or knew that others had made them. The complaint does not allege that Mr. Bajic did anything to cause the price of any securities to rise artificially.

Rather, the complaint lumps Mr. Bajic in with the other defendants without specifying what Mr. Bajic did in violation of the securities laws. By doing so, the complaint places undeserved responsibility and assigns unwarranted knowledge to Mr. Bajic.

On the front end, the complaint alleges that unnamed control persons—with the assistance of a foreign asset manager (Blacklight SA) and its two foreign owners (defendants Kenneth Ciapala and Anthony Killarney)—amassed large blocks of public company shares. The complaint also alleges that the control persons divided their shares into nominee companies controlled by Blacklight before selling them. The complaint, however, contains no allegation that Mr. Bajic knew or participated in any of the steps taken by the control persons and Blacklight to acquire the shares and divide their shares into the nominee companies, or even that he knew this had occurred.

The complaint alleges that Mr. Bajic sold securities he received from Blacklight, remitted the proceeds as directed, and received a small commission for his efforts. It also alleges that the supposed misconduct resulted in $42 million in trading proceeds. Although the Commission seized Mr. Bajic's records, it fails to provide a forthright assessment to the Court regarding how much of those proceeds Mr. Bajic retained. After reverting the proceeds as instructed—mostly to unnamed control persons—Mr. Bajic typically retained 1.5% of the proceeds as a commission. Despite this, the Commission sought to freeze Mr. Bajic's assets while it has made no effort to freeze the vast majority of the remaining 98.5% of the trading proceeds.

On the back end, the complaint alleges that Mr. Bajic and the other defendants were involved in stock promotions. These assertions, on their own, are meaningless. Using stock promoters is not a violation of the federal securities laws unless the stock promoters made false or misleading statements. The complaint contains no allegation that the so-called stock promoters

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Lorna G. Schofield
January 15, 2020
Page 4

made any false or misleading statements. Conspicuously, the complaint contains no allegation that Mr. Bajic knew, or even met or spoke to, the stock promoters or directed them in any way—including, to make any false statements.

Finally, the complaint alleges that Mr. Bajic and other defendants failed to disclose that they owned more than 5% of a public company's securities or sold stock in the absence of an effective registration statement or an applicable exemption. The complaint fails to show that Mr. Bajic, a foreign citizen who resides outside the United States and whose trades occurred entirely outside the United States, knowingly violated these rules.

At bottom, the Commission's complaint fails to allege securities fraud.

## V.     The Commission Has No Authority to Obtain Disgorgement.

Even if the Commission prevails in this case, it cannot obtain disgorgement from Mr. Bajic. The Supreme Court has granted certiorari to address the question of whether there is any basis for the Commission to obtain disgorgement. *See* Pet.'s Br. at i, *Liu v. SEC*, 18-1501 (2019) (questioning "[w]hether the [Commission] may seek and obtain disgorgement from a court as 'equitable relief' for a securities law violation even though this Court has determined that such disgorgement is a penalty").

An analysis of the comprehensive scheme for securities enforcement makes plain that if Congress wanted the Commission to be able to obtain disgorgement, it would have authorized it explicitly. When Congress constructs "an enforcement scheme . . . with . . . evident care," the explicit authorization of certain remedies is "strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 147 (1985). Rather, the absence of a particular remedy creates a "presumption that [the] remedy was deliberately omitted." *Id.* at 147 & n.15 (collecting cases) (citation omitted).

Accordingly, because the Commission's request for an asset freeze was based on its request for disgorgement, which it cannot lawfully obtain in this action, this Court should vacate the Order freezing Mr. Bajic's assets.

## VI.    The Order Freezing Bajic's Assets Should be Vacated or Modified.

We urge the Court to vacate its Order freezing Mr. Bajic's assets. If the Court denies that request we ask in the alternative that the Court modify its Order to enable Mr. Bajic to use some of his assets for reasonable living expenses and legal fees.

A prejudgment asset freeze is a devastating and indiscriminate punishment. *See Grupo Mexicano de Desarrollo SA v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 329 (recognizing that a prejudgment restraint of assets has been called the "nuclear weapon of the law") (internal brackets and citations omitted). Mr. Bajic "cannot be expected to live and support his family with no money

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Lorna G. Schofield
January 15, 2020
Page 5

at all." *SEC v. Santillo*, 2018 WL 3392881, *4 (S.D.N.Y. July 11, 2018). Nor does it allow Mr. Bajic to pay attorneys to oppose the Commission's accusations.

Courts commonly modify asset freeze orders to allow for the payment of reasonable living expenses and attorney's fees. *See, e.g.*, *SEC v. Gonzalez de Castilla*, 170 F. Supp. 2d 427, 430 (S.D.N.Y. 2001) (modifying an asset freeze "to permit the payment of legal fees and disbursement[s]"); *SEC v. Grossman*, 87-cv-1031, 2003 WL 133237, *5 n.9 (S.D.N.Y. Jan. 13, 2003) (recognizing modifications of the asset freeze to permit payment of attorneys' fees); *SEC v. Pinez*, 989 F. Supp. 325, 336 n.12 (D. Mass. 1997) (recognizing asset freeze modifications to allow defendant to pay attorney's fees for both his criminal and civil cases and essential household expenses); *SEC v. International Loan Network, Inc.*, 770 F. Supp. 678, 680 (D.D.C. 1991) (recognizing that defendants had received a modification of the TRO to permit defendants to retain counsel and meet necessary business and living expenses).

In conclusion, we respectfully ask the Court to vacate or modify its Order freezing Mr. Bajic's assets. We request a conference with the Court at its earliest opportunity to discuss the asset freeze. Although we would want to appear at such a conference, we cannot do so without an understanding that we would need to withdraw if reasonable modifications to the asset freeze exempting attorneys' fees are not granted.

Respectfully submitted,

Robert J. Anello

Cc: Kathleen Shields