**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br>**Plaintiff,**<br>**v.**<br><br>**STEVE M. BAJIC,**<br>**RAJESH TANEJA,**<br>**NORFOLK HEIGHTS LTD.,**<br>**FOUNTAIN DRIVE LTD.,**<br>**ISLAND FORTUNE GLOBAL LTD.,**<br>**CRYSTALMOUNT LTD.,**<br>**WISDOM CHAIN LTD.,**<br>**SSID LTD.,**<br>**SURE MIGHTY LTD.,**<br>**TAMARIND INVESTMENTS INC.,**<br>**KENNETH CIAPALA,**<br>**ANTHONY KILLARNEY,**<br>**BLACKLIGHT SA,**<br>**CHRISTOPHER LEE MCKNIGHT, and**<br>**AARON DALE WISE,**<br><br>**Defendants.** | **Civil Action No. 20-cv-00007-LGS** |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR MONETARY REMEDIES AGAINST CHRISTOPHER MCKNIGHT**

Kathleen Burdette Shields (admitted *pro hac vice*)
Attorney for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
33 Arch Street, 24th Floor
Boston, Massachusetts 02110
Phone: (617) 573-8904
Fax: (617) 573-4590
Email: shieldska@sec.gov

# TABLE OF CONTENTS

INTRODUCTION 1

PROCEDURAL HISTORY 1

FACTUAL BACKGROUND AS TO MCKNIGHT 5

ARGUMENT 5

A. The Commission Has Satisfied Its Burden of Proof. 5

B. The Commission Seeks Disgorgement and Prejudgment Interest Against McKnight. 6

1. Disgorgement of $985,303 Reasonably Approximates McKnight's Ill-Gotten Gains. 6

2. Prejudgment Interest of $169,105 Should be Added to McKnight's Disgorgement. 8

C. The Commission Seeks a $100,000 Civil Penalty Against McKnight. 9

1. The Three-Tier Civil Penalty Statutory Scheme 9

2. A Third-Tier Penalty of $100,000 for McKnight Is Appropriate. 11

CONCLUSION 16

# TABLE OF AUTHORITIES

## CASES

*Liu v. SEC*, 140 S. Ct. 1936 (2020)....7

*SEC v. Alpine Securities Corp.,* 41 F. Supp. 3d 235 (S.D.N.Y. 2019)....13

*SEC v. CKB168 Holdings, Ltd.,* No. 13-cv-5584, 2022 WL 3347253 (E.D.N.Y. Aug. 12, 2022)....11

*SEC v. Conaway*, 697 F. Supp. 2d 733 (E.D. Mich. 2010)....6

*SEC v. de Maison*, No. 18-cv-2564, 2021 WL 5936385 (2d Cir. Dec. 16, 2021)....7

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996)....8

*SEC v. Fowler*, 6 F.4th 255 (2d Cir. 2021)....6, 7, 11

*SEC v. Gallison*, 588 F. Supp. 3d 509, 520 (S.D.N.Y. 2022)....7

*SEC v. Genovese*, 553 F. Supp. 3d 24 (S.D.N.Y. 2021)....11

*SEC v. Inorganic Recycling Corp,* No. 99 cv 10159, 2002 WL 1968341 (S.D.N.Y. Aug. 23, 2002)....15

*SEC v. Kenton Capital Ltd.*, 69 F. Supp. 2d 1 (D.D.C. 1998)....11

*SEC v. Kern*, 425 F.3d 143 (2d Cir. 2005)....6

*SEC v. Knox*, No. 18-cv-12058-RGS (D. Mass.)....11

*SEC v. Lek Securities Corp.*, No. 17-cv-1789 (DLC), 2020 WL 1316911 (S.D.N.Y. Mar. 20, 2020)....8, 12, 15

*SEC v. Lybrand*, 281 F. Supp. 2d 726 (S.D.N.Y. 2003), *aff'd sub nom SEC v. Kern*, 425 F.3d 143 (2d Cir. 2005)....14

*SEC v. Moran*, 944 F. Supp. 286 (S.D.N.Y. 1996)....8

*SEC v. Nadel*, No. 11 cv 215, 2016 WL 639063 (E.D.N.Y. Feb. 11, 2016)....16

*SEC v. Rajaratnam*, 918 F.3d 36 (2d Cir. 2019)....13

*SEC v. Robinson,* 2002 WL 1552049 (S.D.N.Y. July 16, 2002), *supplemented by* 2002 WL 1729559 (S.D.N.Y. July 23, 2002)....11

*SEC v. Stratocomm Corp.*, 89 F. Supp. 3d 357 (S.D.N.Y. 2015) ....................12, 15

*SEC v. Universal Express, Inc.*, 475 F. Supp. 2d 412 (S.D.N.Y. 2007), *aff'd sub nom SEC v. Altomare*, 300 Fed. Appx. 70 (2d Cir. 2008) ....................14

*SEC v. Warde,* 151 F.3d 42 (2d Cir. 1998) ....................9

*SEC v. World Info. Technology, Inc.*, 590 F. Supp. 2d 574 (S.D.N.Y. 2008) ....................12

*SEC v. Yang*, No. 15-cv-2387, 2021 WL 1234886 (C.D. Cal. Feb. 16, 2021) ....................7

*Steadman v. SEC*, 450 U.S. 91 (1981) ....................6

**STATUTES AND REGULATIONS**

Section 5 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §77e .................... 2-4

Section 17(a) of the Securities Act, 15 U.S.C. §77q(a) .................... 2-4

Section 20(d) of the Securities Act, 15 U.S.C. §77t(d).................... 9-11

Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78j(b).................... 2-4

Section 13(d) of the Exchange Act, 15 U.S.C. §78m(d).................... 3-4

Section 15(a) of the Exchange Act, 15 U.S.C. §78o(a) .................... 3-4

Section 21(d) of the Exchange Act, 15 U.S.C. §78u(d).................... 6, 7, 9-11

26 U.S.C. §6621 ....................4

17 C.F.R. §201.600(b) ....................8

17 C.F.R. §201.1001(b) ....................10

**LEGISLATIVE HISTORY**

H.R. Rep. 98-355 (1983) *reprinted in* 1983 WL 25397 ....................6

H.R. Rep. 101-616 (1990) *reprinted in* 1990 WL 256464 ....................10

S. Rep. 101-337 (1990) *reprinted in* 1990 WL 263550....................10

## INTRODUCTION

The Court has previously entered a partial judgment against defendant Christopher McKnight ("McKnight") that was the product of a settlement between the parties. *See* Dkt. No. 218. This partial judgment left the amount of disgorgement and prejudgment interest that McKnight should pay open to the Court's determination, and also left open the issue of whether the Court should impose a civil penalty on McKnight, and if so, the amount of that civil penalty. Because the parties have been unable to reach a resolution as to the amount of the appropriate monetary remedies, plaintiff Securities and Exchange Commission ("Commission") now seeks the entry of final judgment against McKnight that incorporates the terms of the prior judgment, and requires McKnight to pay disgorgement of $985,303, prejudgment interest of $169,105 and a civil penalty of $100,000, for a total of $1,254,408.

## PROCEDURAL HISTORY

In January 2020, the Commission filed this action against McKnight and fourteen other defendants with whom he collaborated to sell the securities of Blake Insomnia Therapeutics, Inc. ("Blake") and other companies. The defendants in this action break down into two groups. One group, composed of Steve Bajic, Rajesh Taneja, Kenneth Ciapala, Anthony Killarney, and a number of corporate entities they controlled, operated businesses whose primary purpose was to enable public company control persons fraudulently to sell stock to retail investors in the public United States securities markets. *See* Dkt. No. 1 ("Complaint"), ¶¶1-6. These individuals and their network of nominee companies are referred to here as the "Platform Defendants." Their customers were groups of affiliated individuals and groups ("control groups") that controlled a large percentage of the purportedly unrestricted shares of various microcap issuers. *See id.*, ¶¶3, 32-33, 37-40, 54-55, 74. The Platform Defendants facilitated the illegal dumping of stock on

behalf of control groups in exchange for a portion of the proceeds (commissions that ranged from 4% to 10%). *See id.*, ¶¶10, 53, 66, 71. The Platform Defendants' dumping of shares harmed both the market itself and unsuspecting retail investors, who would have no way to know they were buying restricted stock being dumped by the people controlling those companies. *See id.*, ¶¶2, 4-6, 68-69. The Platform Defendants used offshore nominee companies to provide a layer of disguise to the control groups, who intended to defraud investors by secretly dumping large quantities of restricted stock in circumvention of the requirements imposed by the federal securities laws. *See id.*, ¶¶5, 33, 40-42, 53.

The second group of defendants is composed of McKnight and Aaron Wise, who facilitated promotional campaigns for the issuers whose stock the Platform Defendants were dumping, and provided a layer of disguise to conceal the source of the money used to pay for the promotions. *See id.*, ¶¶8, 57-65. The Commission charged McKnight with aiding and abetting the violations of both the Platform Defendants and also their control group clients, specifically Sections 5(a), 5(c), 17(a)(1), and 17(a)(3) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rules 10b-5(a) and (c) thereunder. *See id.,* Count 8. The Commission also charged McKnight with violating Securities Act Section 17(a)(3) for his role in coordinating the promotions and the false identification of the parties paying for those promotions. *See id.*, Count 7.

The Court entered default judgments against the corporate defendants in this case, including: (1) the entities (specifically Norfolk Heights Ltd., Fountain Drive Ltd., Island Fortune Global Ltd., Crystalmount Ltd., Wisdom Chain Ltd., and Sure Mighty Ltd., Tamarind Investments Inc., and SSID Ltd.) used by defendants Bajic and Taneja to operate an illegal trading platform that sold securities for their control group clients, and (2) Blacklight SA, the

entity through which defendants Ciapala and Killarney operated their illegal trading platform for their control group clients. *See* Dkt. Nos. 112 (Wisdom Chain), 113 (Sure Mighty), 114 (Norfolk Heights), 115 (Crystalmount), 116 (Fountain Drive), 117 (Island Fortune), 240 (Tamarind), 242 (SSID), 241 (Blacklight). These judgments enjoined the defaulting defendants from future securities law violations, imposed penny stock bars, and ordered them to disgorge varying sums equal to their net profits from the illegal trading described in the complaint. *See id*. In addition, defendant Blacklight was ordered to pay a civil penalty of $963,837. *See* Dkt. No. 241, ¶VIII.

The Court has also entered either complete or partial final judgments against most of the individual defendants in this action, as described below:

**Defendant Wise**: On November 23, 2020, the Court entered a final judgment by consent against defendant Aaron Wise, which enjoined him from future violations of Sections 5(a) and (c) and 17(a)(1) and (3) of the Securities Act and Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder, and ordered him to pay disgorgement of $208,000, prejudgment interest of $24,185, and a civil penalty of $75,000. *See* Dkt. No. 219.

**Defendant Taneja**: On November 20, 2020, the Court entered a partial judgment by consent against defendant Rajesh Taneja, which enjoined him from future violations of Sections 5(a) and (c) and 17(a)(1) and (3) of the Securities Act and Sections 10(b), 13(d) and 15(a) of the Exchange Act and Rules 10b-5(a) and (c) thereunder, imposed a penny stock bar, ordered him to pay disgorgement of $837,734 and prejudgment interest of $109,439.29, and left open the issue of whether he should pay a civil penalty and the amount of that penalty for later determination by the Court on the Commission's motion. *See* Dkt. No. 215.

**Defendants Ciapala and Killarney**: On February 1, 2021 and April 27, 2021, respectively, the Court entered partial judgments by consent against defendants Anthony

Killarney and Kenneth Ciapala, which enjoined them from future violations of Sections 5(a) and (c) and 17(a)(1) and (3) of the Securities Act and Sections 10(b), 13(d) and 15(a) of the Exchange Act and Rules 10b-5(a) and (c) thereunder, imposed penny stock bars, and left open the issues of disgorgement, prejudgment interest and civil penalty for later determination by the Court on the Commission's motion. *See* Dkt. Nos. 237, 248.

**Defendant McKnight**: On November 23, 2020, the Court entered a partial judgment by consent against McKnight, which enjoined him from future violations of Sections 5(a) and (c) and 17(a)(1) and (3) of the Securities Act and Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c). *See* Dkt. No. 218, ¶¶I-III. The partial judgment stated that McKnight "shall pay disgorgement of ill-gotten gains and prejudgment interest thereon," that "prejudgment interest shall be calculated based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. §6621(a)(2)" and left open the issue of whether a civil penalty should be imposed, and if so, the amount of the penalty. *See id.* at ¶IV. The parties also agreed, and the Court ordered, that should the parties be unable to reach agreement on the monetary issues, the Commission would file a motion with the Court seeking a imposition of monetary remedies. *See id*. The judgment further provides that in connection with the Commission's motion for civil penalties, (i) McKnight "will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint;" (ii) McKnight may not challenge the validity of the partial judgment or his consent to that judgment; (iii) "the allegations of the Complaint shall be accepted as and deemed true by the Court;" and (iv) the Court may refer to evidence "without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure." *Id.*

## FACTUAL BACKGROUND AS TO MCKNIGHT

McKnight facilitated the Platform Defendants' and control groups' illegal trading by helping to create the demand for the securities that the Platform Defendants sought to dump on behalf of their control group clients. Complaint*,* ¶¶8, 57-58. He also facilitated the other defendants' illegal sales by helping to disguise (from transfer agents, brokers, and ultimately the public) the fact that the sellers were really the issuers' control groups (who would have been prohibited from selling their shares in bulk without registration). *See id.*, ¶¶6, 34.ii, 59. By serving as an intermediary between the control groups and the people actually running the stock promotions, McKnight provided layers of anonymity that enabled the control groups to pay for promotional campaigns while concealing the control groups' involvement. *See id*.

McKnight received directions from the control groups about the stock promotional activities they wanted done and then communicated those directions to the entity that was arranging the stock promotions. *See id.*, ¶¶59.iv-vii, 60.i-vi. McKnight also coordinated the budgets and the payments for those promotions, again by acting as a conduit from the control groups to the promotion arranger. *See id*. ¶¶59.iv-vii, 60.i-vi, 62. McKnight acted at least recklessly when he provided false information about the identities of parties paying for the promotions to the entity arranging the stock promotions, and he acted recklessly in providing substantial assistance that facilitated the Platform Defendants' and control groups' fraud. *See id.*, ¶¶58, 59.viii, 60.v, 64.

## <u>ARGUMENT</u>

### A. The Commission Has Satisfied Its Burden of Proof.

The standard of proof for imposing sanctions against securities law violators is a "preponderance of the evidence." *Steadman v. SEC*, 450 U.S. 91, 103 (1981) (Commission

administrative proceeding); *SEC v. Conaway*, 697 F. Supp. 2d 733, 745 (E.D. Mich. 2010) (preponderance standard "applies to remedies as well as liability"); *see also* H.R. Rep. 98-355 (1983) *reprinted in* 1983 WL 25397, at *15-16 (Leg. Hist.).

Pursuant to the partial judgment entered by the Court, McKnight is "precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint;" and "the allegations of the Complaint shall be accepted as and deemed true by the Court." Dkt. No. 218 at ¶IV. These provisions in the judgment mean that the Commission has satisfied the predicate requirement for the imposition of a penalty - that McKnight violated the securities laws. Courts have broad equitable power to order the disgorgement of ill-gotten gains obtained through violations of the federal securities laws. *See SEC v. Fowler*, 6 F.4th 255, 265 (2d Cir. 2021); *SEC v. Contorinis*, 743 F.3d 296, 306–07 (2d Cir. 2014). The Court's decision as to the amount of a civil penalty is within its discretion after determining the appropriate tier of penalty that describes the defendants' conduct. *See SEC v. Kern*, 425 F.3d 143, 153 (2d Cir. 2005) (imposing third tier penalties of $1.1 million for defendants' participation in sales of unregistered securities in violations of Securities Act §5).

## B. The Commission Seeks Disgorgement and Prejudgment Interest Against McKnight.

### 1. Disgorgement of $985,303 Reasonably Approximates McKnight's Ill-Gotten Gains.

Though long recognized as an available remedy in Commission enforcement actions, Section 21(d) of the Exchange Act now expressly authorizes the Commission to seek disgorgement for violations of the federal securities laws. *See* 15 U.S.C. §78u(d)(7) (added by the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, which applies to "any action or proceeding that is pending on, or commenced after" January 1, 2021. *Id.* § 3501(b)). The Supreme Court also reaffirmed the Commission's authority to obtain

disgorgement for violations of any provision of the federal securities laws. *See Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020). Construing the Exchange Act provision that allowed for any form of equitable relief that benefited investors, the Court held that, "[a] disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief under [15 U.S.C.] §78u(d)(5)." *Id.* Disgorgement is a "profit-based measure of unjust enrichment" that is measured by the defendant's "wrongful gain," and is ordered to reflect the "foundational principle" of equity that "it would be inequitable that a wrongdoer should make a profit out of his own wrong." *Id.* at 1943 (internal quotations omitted); *see also SEC v. Gallison*, 588 F. Supp. 3d 509, 520 (S.D.N.Y. 2022).

Disgorgement only needs to be a "reasonable approximation of profits" caused by the violation, and the wrongdoer should bear the risk of any uncertainty in determining the amount of disgorgement. *See Fowler*, 6 F.4th at 267; *SEC v. de Maison*, No. 18-cv-2564, 2021 WL 5936385, *2 (2d Cir. Dec. 16, 2021) (summary order); *SEC v. Yang*, No. 15-cv-2387, 2021 WL 1234886, *3 (C.D. Cal. Feb. 16, 2021) (applying this standard after *Liu*).

The Commission's disgorgement calculation focuses, as *Liu* commands, on approximating McKnight's profits from facilitating securities fraud during 2016 and 2017 as described in the Complaint. As the Complaint describes, McKnight was paid for his services in coordinating promotions for stock that the Platform Defendants were selling on behalf of Control Group A, and for serving as a payment intermediary for those promotions. *See* Complaint, ¶¶57-62. During that time period, a corporate entity owned by McKnight received numerous payments, both directly and indirectly through their intermediaries, from the other defendants in this action and the members of Control Group A. *See* Declaration of Trevor Donelan ("Donelan Dec."), filed herewith, ¶¶9-11. McKnight also made a number of payments to the corporate

entity controlled by co-defendant Aaron Wise. *See id.*, ¶¶9, 11. Netting these payments against each other yields a total net profits number of $985,303. *See id.,* ¶¶9, 12. These funds, which McKnight received directly or indirectly from the defendants whose conduct he was aiding and abetting, are a reasonable approximation of his ill-gotten gains connected to the scheme. *See de Maison*, 2021 WL 5936385 at *2 (upholding disgorgement that was a reasonable approximation of net profits and finding that precise tracing of funds is not required to establish disgorgement amount).

To the extent the Court feels that it is relevant to its analysis, the Commission intends to distribute the funds collected from McKnight, in combination with funds recovered from other defendants in this action, to harmed investors if it is feasible to do so.

**2. Prejudgment Interest of $169,105 Should be Added to McKnight's Disgorgement.**

The Commission also seeks prejudgment interest. The purpose of ordering payment of prejudgment interest is to deprive the wrongdoer of the benefit of "what amounts to an interest free loan procured as a result of illegal activity." *SEC v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996); *see also SEC v. Lek Securities Corp.*, No. 17-cv-1789 (DLC), 2020 WL 1316911, *4 (S.D.N.Y. Mar. 20, 2020) ("an award of prejudgment interest may be needed in order to ensure that the defendant not enjoy a windfall as a result of its wrongdoing"). The Court has broad discretion whether to grant prejudgment interest and what rate to use for calculation. *See SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476-77 (2d Cir. 1996) (using IRS underpayment rate); 17 C.F.R. §201.600(b) (Commission Rules of Practice state that prejudgment interest is computed at IRS underpayment rate, compounded quarterly).

As required by the terms of the partial judgment against McKnight, the Commission has calculated prejudgment interest using the IRS underpayment rate. *See* Dkt. No. 218, ¶IV;

Donelan Dec., ¶13. The prejudgment interest on the proceeds earned for each year was calculated separately, assuming (favorably to McKnight) that he received all of the sums in each calendar year on the last day of that year. *See* Donelan Dec., ¶13. The ending date for the prejudgment interest calculation was June 30, 2020 [REDACTED]

[REDACTED] Applying this method produces prejudgment interest for McKnight in the total amount of $169,105, which should be added to McKnight's disgorgement amount of $985,303 for a combined total of $1,154,408. *See* Donelan Dec., ¶14. By virtue of the time value of money, McKnight received an additional benefit from being paid for his participation in the scheme, and he should be obligated to repay this amount. *See SEC v. Warde,* 151 F.3d 42, 50 (2d Cir. 1998) (prejudgment interest can be awarded in addition to disgorgement to deprive a defendant of the time value of money).

**C. The Commission Seeks a $100,000 Civil Penalty Against McKnight.**

**1. The Three-Tier Civil Penalty Statutory Scheme**

The Commission requests that the Court impose a civil monetary penalty against McKnight. Section 21(d)(3)(A) of the Exchange Act, 15 U.S.C. §78u(d)(3)(A), and Section 20(d)(1) of the Securities Act, 15 U.S.C. §77t(d)(1), give the Commission authority to seek civil penalties against violators of the securities laws based on the Congressional policy judgment that disgorgement alone is an insufficient remedy. In 1990, Congress passed the Securities Enforcement Remedies and Penny Stock Reform Act of 1990 ("Remedies Act"), which enabled the Commission to seek civil penalties in civil actions other than actions alleging insider trading. Congress concluded that "[s]ince disgorgement merely requires the return of wrongfully obtained profits, it does not impose any meaningful economic cost on the law violator. The

Committee, therefore, concluded that authority to seek or impose substantial money penalties, in addition to the disgorgement of profits, is necessary for the deterrence of securities law violations that otherwise would provide great financial returns to the violator." S. Rep. 101-337 (1990), *reprinted in* 1990 WL 263550 (Leg. Hist.). The House Report struck the same chord. "Disgorgement merely requires the return of wrongfully obtained profits; it does not result in any actual economic penalty or act as a financial disincentive to engaging in securities fraud." H.R. Rep. 101-616 (1990), *reprinted in* 1990 WL 256464 (Leg. Hist.).

Under both the Securities Act and the Exchange Act, courts can impose penalties in civil injunctive actions not to exceed the greater of: (i) the gross pecuniary gain to a defendant as a result of a violation, or (ii) a specified amount per violation, depending on whether the violation falls in the "first-tier," "second-tier" or "third-tier." *See* 15 U.S.C. §77t(d)(2); 15 U.S.C. §78u(d)(3)(B). As applied to McKnight's violations, the maximum first-tier penalty amount is $10,360, the maximum second-tier penalty amount for engaging in "fraud, deceit, manipulation or deliberate or reckless disregard of a regulatory requirement," is $103,591, and the maximum third-pier penalty amount for engaging in fraud where the violation directly or indirectly resulted in substantial losses, or created a significant risk of substantial losses to other persons, is $207,183 per violation. *See* 17 C.F.R. §201.1001(b).[1]

Although the statutes provide maximum penalties "for each such violation," neither the Securities Act nor the Exchange Act prescribe how to calculate the number of violations. Several courts have determined that a "violation" encompasses each instance that a defendant

[1] Though the statutes contain lower penalty amounts for each of the tiers, these amounts were increased for violations occurring after November 2, 2015, to account for inflation. *See* 17 C.F.R. §201.1001(b); Inflation Adjustments to the Civil Monetary Penalties Administered by the Securities and Exchange Commission (as of Jan. 15, 2022), *available at* www.sec.gov/enforce/civil-penalties-inflation-adjustments.htm.

acted to violate the securities laws. *See, e.g.*, *Fowler*, 6 F.4th at 265-66 (affirming district court penalty of $1,950,000, equal to a third-tier penalty of $150,000 for each of defendant's 13 defrauded customers). Other courts have considered "the number of investors defrauded or the total number of fraudulent transactions" or the number of statutes the defendant violated. *See, e.g., SEC v. Genovese*, 553 F. Supp. 3d 24, 46-47 (S.D.N.Y. 2021) (imposing a third tier penalty of $1 million when defendant defrauded at least five investors in violation of several statutes); *SEC v. Knox*, No. 18-cv-12058-RGS (D. Mass.), Dkt. Nos. 237 (dated Mar. 3, 2022), 241(dated Mar. 23, 2022) (granting civil penalty calculated by multiplying the maximum third-tier penalty amount by each of the 21 bank accounts defendant used to aid and abet the fraudulent scheme); *SEC v. Kenton Capital Ltd.*, 69 F. Supp. 2d 1, 17 n.15 (D.D.C. 1998) (assessing a $1.2 million penalty calculated by "multiplying the maximum third tier penalty" by the "number of investors who actually sent money" to the defendant). The Court may also simply impose a penalty in the amount of a defendant's pecuniary gain. *See SEC v. CKB168 Holdings, Ltd.,* No. 13-cv-5584, 2022 WL 3347253, *7 (E.D.N.Y. Aug. 12, 2022); 15 U.S.C. §77t(d)((2); 15 U.S.C. §78u(d)(3)(B).

**2. A Penalty of $100,000 for McKnight Is Appropriate.**

The Commission submits that a third-tier penalty of $100,000 is appropriate for McKnight. His violations facilitated a fraud that directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons who decided to buy the microcap securities dumped into the market by the Platform Defendants and their control group clients. *See* Complaint ¶¶3-4, 7-9, 66-69; *see also SEC v. Robinson,* No. 00-civ-7452, 2002 WL 1552049, *11 (S.D.N.Y. July 16, 2002) (third-tier penalty proper where defendant's "sales of stock 'directly or indirectly resulted in substantial losses or created a significant risk of

substantial losses to other persons'"). As the example relating to Blake stock that is described in the Complaint demonstrates, both the price and volume of Blake shares rose precipitously during the promotions that coordinated with the defendants' sales. *See* Complaint, ¶¶8-9, 68, 69. Once those promotions ceased, the price of Blake stock, and its trading volume declined, thus harming investors who had purchased the stock at inflated prices. *See id.; see also* Declaration of Trevor Donelan, Dkt. No. 6-1 at ¶¶36, 38-39. Other courts in this district have ordered third tier penalties for fraudulent conduct like McKnight's. *See e.g.*, *Lek Securities Corp*., 2020 WL 1316911 at *7 (imposing third tier penalties of $5 million on individual defendants who facilitated manipulative trading schemes for years); *SEC v. Stratocomm Corp.*, 89 F. Supp. 3d 357, 373 (S.D.N.Y. 2015) (imposing third tier penalties on defendants who engaged in fraudulent scheme to offer and sell penny stock); *SEC v. World Info. Technology, Inc.*, 590 F. Supp. 2d 574, 578 (S.D.N.Y. 2008) (ordering promoter in pump and dump scheme to pay third-tier civil penalty).

The $100,000 sum that the Commission seeks is comparable to, and commensurate with, the civil penalty ordered against defendant Wise of $75,000. McKnight's conduct in this action is most similar to Wise's as they both facilitated the stock promotion activity that created the demand that drove their co-defendants' illegal sales. It is reasonable that the Court impose a penalty on McKnight that is more than Wise's penalty as his financial gain from the scheme was far greater than Wise's and McKnight's misconduct was more involved and more substantial than Wise's. *See* Complaint, ¶¶59-60; *compare* Final Judgment as to Aaron Wise, Dkt. No. 219 at ¶IV (ordering Wise to pay disgorgement of $208,000 "representing profits gained as a result of the conduct alleged in the Complaint").

A third-tier penalty also comports with the general factors courts consider when imposing

civil penalties: 1) the seriousness of the violations; 2) the defendant's scienter; 3) the repeated nature of the violations; 4) whether the defendant has admitted wrongdoing; 5) the losses or risk of losses caused by the conduct; 6) any cooperation provided to enforcement authorities; and 7) ability to pay. *See SEC v. Rajaratnam*, 918 F.3d 36, 44 (2d Cir. 2019); *SEC v. Alpine Securities Corp.*, 41 F. Supp. 3d 235, 245 (S.D.N.Y. 2019).

Here, these factors weigh in favor of a third-tier penalty. With regard to the first and fifth factors, McKnight participated in egregious securities law violations by working with others to promote numerous penny stocks on behalf of the control groups who controlled those stocks, concealed their control, and dumped those shares on unsuspecting retail investors in connection with misleading promotional activities. *See* Complaint, ¶¶8-9, 59-60. McKnight's role in this scheme was to generate the demand from investors that allowed these control groups to make tens of millions in proceeds, while the investors who purchased these shares lost a lot of money. *See id.* at ¶¶4, 68; Dkt. No. 6-1 at ¶39. McKnight's misconduct was not isolated. This case focuses on his conduct relating to Blake and at least three other securities whose shares were dumped over many months. *See* Complaint, ¶59. Further, the facts in the complaint establish that McKnight cannot claim that he acted mistakenly or negligently. Rather, his actions in this case demonstrated that he knowingly, or with at least a deliberate disregard for the truth, acted in ways to further the fraudulent scheme to control, distribute and sell Blake and other penny stocks. *See id.* ¶¶58-63 (describing McKnight's knowledge or at least recklessness that: 1) he was concealing the identity of the party paying for promotions from investors, 2) he was acting as a middleman between groups that controlled stock and the promotion arrangers so that it would be challenging for anyone external to the scheme to uncover the connections, and 3) he was providing false information that would be used in promotions).

Third, McKnight's misconduct lasted many months. *See* Complaint, ¶59 (McKnight was involved in promotions for at least four securities between December 2016 and June 2017). His misconduct was not isolated, but rather was a series of actions taken to facilitate and conceal a massive securities fraud scheme. *See SEC v. Universal Express Inc.,* 475 F. Supp. 2d 412, 429 (S.D.N.Y. 2007) (third-tier penalties proper where defendants committed many violations over at least four years); *SEC v. Lybrand*, 281 F. Supp. 2d 726, 731 (S.D.N.Y. 2003), *aff'd sub nom SEC v. Kern*, 425 F.3d 143 (2d Cir. 2005) (third-tier penalties awarded) ("Far from being an isolated event, the actions of these men involved a multitude of improper securities transactions that occurred over several months – they violated the securities laws repeatedly and with regularity").

[redacted]

[redacted]

The seventh factor, whether McKnight may or may not be able to pay a judgment, does not weigh against a civil penalty of $100,000. While McKnight has made some financial disclosures to the Commission, he has not provided the back-up documentation that would substantiate his claimed financial picture. It is thus impossible for the Commission to say with any certainty that McKnight currently lacks assets to pay the requested civil penalty on top of the existing disgorgement. Further, McKnight is only 48 years old. *See* Complaint, ¶25. As a result, he will need to find employment to support himself on an ongoing basis. As demonstrated by his conduct in this case, he is competent and has both business and interpersonal skills. He has skills that can be used to obtain lawful employment, and he should be obligated to pay civil penalties out of his future income.

In addition, the non-dispositive factor of ability to pay, at most, allows the Court discretion to lower the third-tier penalty that would otherwise be appropriate.

> [Defendant's] claims of poverty cannot defeat the imposition of a disgorgement order or civil penalty. Perhaps, if [defendant] is indeed impecunious, the SEC will eventually prove unable to collect on any judgment. But to withhold the remedy of disgorgement or penalty simply because a swindler claims that she has already spent all the loot and cannot pay would not serve the purposes of the securities laws. An order of disgorgement and civil penalty are both proper remedies in this case; the future will tell whether the SEC can find assets to levy upon. . . . . As noted above, the Court has already taken defendant's financial situation into account in setting the amount of the civil penalty substantially lower than would otherwise be appropriate.

*SEC v. Inorganic Recycling Corp.,* No. 99 cv 10159, 2002 WL 1968341, at *4 (S.D.N.Y. Aug. 23, 2002); *accord Stratocomm Corp.*, 89 F. Supp. 3d at 373 ("While the court may take the defendant's current financial difficulties into account, these circumstances alone cannot negate the need for a severe civil penalty."); *Lek Securities Corp.*, 2020 WL 1316911 at *8 (finding that "Defendants' current financial position is not a bar to the imposition of significant civil

penalties" especially given that they "have decades of their working lives ahead of them" and they "were instrumental in building a company that produced millions of dollars in revenue"); *SEC v. Nadel*, No. 11 cv 215, 2016 WL 639063, *26 (E.D.N.Y. Feb. 11, 2016) (imposing civil penalty of $1,000,000 on defendants who provided some financial information to support claims of distressed financial condition but where "gaps admittedly exist in Defendants' overall financial picture"). Imposing a civil penalty of $100,000 on McKnight would serve both the specific and the general deterrent effect of cautioning both him and other securities law violators that their fraudulent conduct will come at a meaningful financial cost and they will be required to do more than simply repay their profits from engaging in fraud.

**CONCLUSION**

For the reasons set forth above, this Court should issue a revised final judgment against McKnight in the form filed herewith that, in addition to the other remedies previously imposed, requires him to pay disgorgement, prejudgment interest and a civil penalty, totaling $1,254,408.

Dated: November 10, 2022

/s/ Kathleen Shields
Kathleen Burdette Shields (admitted *pro hac vice*)
33 Arch Street, 24th Floor
Boston, Massachusetts 02110
Tel: (617) 573-8904
Fax: (617) 573-4590
shieldska@sec.gov

**Certificate of Service**

I hereby certify that, on November 10, 2022, a true and correct copy of the foregoing document and the related documents were filed through the Court's CM/ECF system, and accordingly, the document will be sent electronically to all participants registered to receive electronic notice in this case.

/s/ Kathleen Burdette Shields
Kathleen Burdette Shields